IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRUDY A. KREISER,          :
                              :          No. 4:cv-04-2217
          Plaintiff,      :          (Judge Jones)
                              :
          v.                 :
                              :
LIBERTY LIFE ASSURANCE   :
COMPANY OF BOSTON        :
                              :
          Defendant.     :

**MEMORANDUM AND ORDER**

July 27, 2005

Pending before the Court are a Motion for Summary Judgment (Rec. Doc. 17) filed by the Plaintiff Trudy A. Kreiser ("Plaintiff" or "Kreiser") and a Motion for Summary (Rec. Doc. 20) filed by Defendant Liberty Life Assurance Company of Boston ("Defendant" or "Liberty Life").

For the reasons stated below, we will grant Defendant's Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment will be denied and this case closed.

**PROCEDURAL HISTORY:**

On October 7, 2004 Plaintiff filed a complaint against Liberty Life in the United States District Court for the Middle District of Pennsylvania including a

1

cause of action arising under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.   (See Rec. Doc. 1).  In Count I of the complaint, Plaintiff contends that Defendant improperly denied her benefits under ERISA.  An answer was filed to the complaint on December 20, 2004.  (See Rec. Doc. 7).   Federal question jurisdiction over this ERISA action is proper pursuant to 28 U.S.C. § 1331.

Discovery in the above-captioned action closed on May 20, 2005.  On June 1, 2005, both Plaintiff and Defendant filed the instant motions, which have been briefed by the parties and are accordingly ripe for disposition.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P.  56©); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

2

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. <u>Id.</u> at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. <u>Celotex Corp.</u>, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 511 (3d Cir. 1994) (internal citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358,

1363 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." <u>Id.</u> at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

## **STATEMENT OF MATERIAL FACTS:**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party in our analysis of the pending motions.

At all times relevant to this litigation, Plaintiff was employed as a cafeteria worker by The Milton S. Hershey Medical Center ("HMC") and was eligible to participate in her employer's Group Disability Income Policy (the "Plan"). The parties agree that the Defendant is an administrator with respect to the Plan.

Plaintiff ceased working at HMC on April 15, 2003 because she was suffering from vertigo. On or about April 17, 2003 Plaintiff commenced a period of disability leave from her employment at HMC at the request of her employer.

This leave led Plaintiff to file an application on October 16, 2003 for disability benefits pursuant to the Plan.

Pursuant to the Plan, Kreiser's application sought benefits pursuant to the twenty-four (24) month own occupation benefit portion of the Plan.  Under the Plan, in order for Kreiser to be eligible for long term disability benefits her condition must prevent her from performing the material and substantial duties of her own occupation during the elimination period and the first twenty-four (24) months of her alleged disability.  Therefore, the appropriate inquiry is whether Kreiser's disability, if any, prevented her from doing her job as a cafeteria worker.[1]

In connection with her application, Plaintiff submitted to Defendant various medical records that she believed documented her disability.  Among the records submitted were the following: (1) various office notes written by Plaintiff's physician Dr. Peter Lewis, (2) a final report and discharge summary concerning a November 2002 cardiac catheterization procedure, (3) HMC's emergency department summary of Plaintiff's April 16, 2003 visit, (4) final report of an exercise echocardioagram and EKG performed on Plaintiff on May 21, 2003, (5) a report of MRI tests performed on Plaintiff's brain and internal auditory canal on

---

[1] Although not relevant here, for disability payments to continue beyond twenty-four months, Kreiser must be unable to perform the material and substantial duties of any occupation.

5

June 19, 2003, (6) a letter from Dr. Patrick McNulty, Plaintiff's cardiologist,

indicating that Plaintiff walked seven minutes on a treadmill with no chest pain;

and, (7) forms completed by Dr. Lewis at various points in 2003 which describe

the physical restrictions he placed on Plaintiff, which included "no heavy lifting;

no prolonged time on feet.") (Rec. Doc. 24, Exs. 5-11).

Subject to a full reservation of rights by Defendant, Plaintiff began to

receive disability benefits on October 17, 2003.  Subsequently, Defendant began a

more thorough review of Plaintiff's application for benefits.  The review included

an analysis by a consulting physician to Liberty Life, Dr. Steven Miszkiewicz.  Dr.

Miszkiewicz confirmed that Kreiser had been diagnosed with various conditions

including diabetes mellitus, coronary artery disease, hypertension, sleep apnea and

depression.  However, Dr. Miszkiewicz determined that "these comorbid illnesses

appear stable with suboptimal control of her diabetes mellitus."  (Meacham Aff. at

LL-0099, Rec Doc. 24 Ex 1). Dr. Miszkiewicz next stated that he believed that

Kreiser's various medications taken for the aforestated illnesses were the likely

cause of her vertigo and dizziness because she did not have a classic case of

vertigo, indicated by her positive response to treatments.  To conclude, Dr.

Miszkiewicz found that the medical evidence did not support the finding by

Plaintiff's physician and rather "continuing her restrictions from working are not

supported after 7/14/03." Id.

After receiving Dr. Miszkiewicz's report, Liberty Life denied Kreiser's

claim.  A letter memorializing this denial stated that:

> Based on the medical information in relation to your occupation
> requirements, you were capable of performing the duties of your Own
> Occupation as of July 14, 2003.  Therefore you do not meet your
> policy's definition of disability, and we must close your claim.
> Benefits have been paid through January 13, 2004 and your claim is
> closed as of January 15, 2004.

(Rec. Doc. 19, Ex. D).  This letter also instructed Kreiser on how to appeal this

determination.  Plaintiff next filed an appropriate appeal. (Id. at Ex. E).

Following a request by Liberty Life to buttress the record of her application

on appeal, Dr. Lewis sent Defendant a letter on February 17, 2004 that explained in

more detail Kreiser's condition.  He explained that she was suffering from inter

alia vertigo, which caused her to suffer intermittent falls that made it unsafe for her

to perform her employment duties as a cafeteria worker at HMC.  (Rec. Doc. 24 Ex

20).

Liberty Life also engaged in its own independent analysis after Kreiser filed

her appeal.  First, it employed a private investigator who observed Kreiser over  the

course of three days in April 2004.  The investigator observed Kreiser working at

the Little Meadow Farm in Hummelstown, Pennsylvania.  He concluded that:

[I]t would appear the claimant is employed at Little Meadow Farm,

7

> which is a small feed store behind claimant's residence.  During the course of surveillance, the claimant was found to be active as she was observed within the feed store.  The claimant was observed to walk and move about without using a cane, crutches, or other visible supporting device.

(Confidential Investigative Report of Gregory Peck of April 12, 2004; Rec Doc. 24 Ex. 21).

Liberty Life also obtained an independent peer medical review of Kreiser's medical records.  To ensure an independent review, Liberty Life employed a private company which itself retained an independent medical professional to engage in the review.  This review was conducted by Dr. Gary Greenwood, who concluded that:

> A MRI of the brain and auditory canals from 6/19/03 was normal. There is no indication that a hearing test or EMG have been considered. There is no  indication that the light headedness is associated with an arrhythmia or poor control of the blood sugar. While Dr. Lewis indicated in his letter dated 2/14/04 that Ms. Kreiser has had intermittent falls, there is no documentation to support [that] Ms. Kreiser has had any falls, motor vehicle accidents, or syncope.

(Report of Dr. Gary P. Greenwood of April 19, 2004; Rec. Doc. 24 Ex. 22).

Subsequent to these reports, Liberty Life informed Kreiser that its original determination that she was not entitled to benefits would be affirmed.  Kreiser then filed the instant action on October 7, 2004.  (See Rec. Doc. 1).

**DISCUSSION**

In an ERISA action, a district court must first determine the applicable standard of review and then proceed to evaluate the facts in light of that standard. Accordingly, we will first turn to the issue of the proper standard of review.

## A.   Applicable Standard of Review

Under ERISA, a court reviewing an administrator's decision to deny benefits is by default reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the employee's eligibility or construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 253 (3d Cir. 2004).  If a plan provides discretionary authority to the administrator or fiduciary, then a reviewing court applies a form of arbitrary and capricious review.  Firestone Tire & Rubber Co., 489 U.S. at 111-12, 115; see Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997).  Discretionary authority can be provided for by express or implied language in the benefit plan.  Luby v. Teamsters Health, Welfare, & Pension Trust, 944 F.2d 1176, 1180 (3d Cir. 1991).  Whether that arbitrary and capricious review is heightened in any way depends on the presence of potentially conflicted ERISA fiduciaries and is determined on a sliding scale that we will discuss in further detail below.  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000).

The scope of discovery depends upon the standard of review.  In the Third Circuit, "a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator."  Luby, 944 F.2d at 1184-85.  In sharp contrast, the record available to a court conducting an arbitrary and capricious review is the record made before the plan administrator, which cannot be supplemented during litigation.  See Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004)(citing Mitchell, 113 F.3d at 440).  Nevertheless, when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record.  Id.

Our consideration of the proper standard of review does not end with the parties' agreement on an arbitrary and capricious standard, but warrants further review for the reasons that follow.  In Pinto, the Third Circuit Court of Appeals held that in reviewing an ERISA plan fiduciary's discretionary determination regarding benefits, a court must take into account the existence of the structural conflict of interest present when a financially interested entity also makes benefit determinations.  See Kosiba, 384 F.3d at 64(citing Pinto, 214 F.3d at 377).  In Pinto, the Third Circuit adopted a "sliding scale" approach, in which the district

courts must "consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefit determinations of discretionary decisionmakers." Id. (citing Pinto, 214 F.3d at 393).  The afore-mentioned "sliding scale method" "intensifies the degree of scrutiny to match the degree of conflict."  Id. at 379.

As the Third Circuit recently explained in Kosiba, Pinto offered a nonexclusive list of factors to consider in assessing whether a structural conflict of interest warranting heightened review exists.  The factors a court considers in determining the degree of scrutiny to afford the administrator in the determination to terminate benefits include: "(1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the 'presumed desire to maintain employee satisfaction.'" Stratton, 363 F.3d at 254 (citing Pinto, 214 F.3d at 392).

In Pinto itself, the Third Circuit concluded that "heightened arbitrary and capricious review" or review "on the far end of the arbitrary and capricious 'range'" was appropriate because Pinto's insurer both made benefits determinations and funded the benefits, and because of various procedural

11

anomalies that tended to suggest that "whenever it was at a crossroads, [the insurer defendant] chose the decision disfavorable to Pinto." Pinto, 214 F.3d at 393-4. Accordingly, under Pinto, a conflict of interest is presumed when an insurance company both determines eligibility for benefits and pays out those benefits from its own funds, because there exists an "active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." Id. at 388.  Defendant counters the significance of this conflict by arguing that "there is no evidence suggesting that a decision in favor of awarding benefits of Ms. Kreiser would somehow adversely impact the financial status of Liberty Life, a viable and large insurance company." (Br. Opp. Def. Mot. Dismiss at 4; Rec. Doc. 25).  We find no support, however, in the case law, which allows us to relax our scrutiny merely because the party with a conflict is large and financially sound.

Specifically, the significance of Defendant's conflict is what we must use to determine how heightened our scrutiny must be of Liberty Life's denial of Kreiser's request for benefits.  Under the Pinto sliding scale, our inquiry is intensified to match the severity of the Defendant's conflict.  As the Third Circuit has explained, "[w]hen applying this standard, a court is directed to consider 'the nature and degree of apparent conflicts' and shape its review accordingly, with the

12

result that the less evidence there is of conflict on the part of the administrator, the more deferential the standard becomes." McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623-24 (3d Cir. 2004)(quoting Pinto, 213 F.3d at 393).  Under a significantly heightened review, courts afford the administrator less deference due to the existence of a conflict.  Smathers v. Multi-Tool, Inc. / Multi-Plastics, Inc. Employee Health & Welfare Plan, 298 F.3d 191, 199-200 (3d Cir. 2002)("Any deference we might ordinarily afford this decision will be tempered due to Multi-Tool's conflict of interest.").  The more significant the conflict, the more searching is a court's review.

Since we believe that even under the most heightened standard, which would be used if there was a significant conflict, Liberty Life's decision is proper, we need not engage in a detailed analysis of exactly how heightened our arbitrary and capricious standard must be and we will apply the least deferential of those standards.  See McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan, 340 F.3d 139, 143 n.2 (3d Cir. 2003)(holding that a court may apply a more heightened scrutiny if they same result in favor of the administrator would be reached under a less heightened scrutiny).  Although in actuality, Liberty Life as a large insurer might indeed have minimal conflict, we do not believe it necessary to determine just how large a conflict does indeed exist.  (Holding that a lesser

13

heightened review was appropriate after the district court conducting a hearing to determine the appropriate standard of review.).  Under this heightened standard, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan."  Smathers, 298 F.3d at 199.

### B.      Review of Kreiser's Claim for Benefits

The Third Circuit Court of Appeals has instructed that in reviewing a denial of benefits under the "arbitrary and capricious" standard, a plan administrator's decision will be overturned only if it is "clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan."  Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., 222 F.3d 123, 129 (3d Cir. 2000)(quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 41 (3d Cir. 1993)).  The Third Circuit has recently instructed that a court should affirm the plan administrator's determination as long as it is supported by substantial evidence in the record, even if the record also contains substantial evidence that would support a different result.  Johnson v. UMWA Health and Retirement Funds, 2005 U.S. App. LEXIS 2115, * 8 (3d Cir. 2005).  "[A] court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."  Orvosh, 222 F.3d at

129(internal quotations omitted).  Furthermore, "whether a claim decision is arbitrary and capricious requires a determination 'whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known by the administrator at the time the decision was made.'" Bader v. RHI Refractories America, Inc., 111 Fed. Appx. 117, 120-21 (3d Cir. 2004)(quoting Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989)).

Moreover, in applying the heightened arbitrary and capricious standard of review, the Third Circuit Court of Appeals has stated that courts should look not only at the result–whether it is supported by reason–but at the process by which the result is achieved.  Sweeney v. Std. Ins. Co., 276 F.Supp.2d 388, 394 (E.D. Pa. 2003)(quoting Pinto, 214 F.3d at 393).  "A court should intensify the level of scrutiny it applies to an insurer's decision if they are any procedural irregularities in the decision-making process."  Id. at 394.[2]

To determine whether Plaintiff carried her burden, we look to the record as a whole.  See Mitchell, 113 F.3d at 440.  As we previously explained, under the arbitrary and capricious standard of review, the "whole" record consists of that evidence that was before the administrator when it made the decision being reviewed.  Id.; see also Luby, 944 F.2d at 1184, n.8.

---

[2] We note, and Plaintiff does not disagree, that the procedures employed by Liberty Life appear normal and therefore do not warrant an increased scrutiny with respect to process.

At the outset of our evaluation of Plaintiff's claim, we must note that despite her comorbid conditions, her application for disability benefits stated that only her vertigo rendered her unable to work at the HMC cafeteria.  As she stated on her Application for Disability Benefits when asked "how and where injury occurred" she stated that she "felt like I was spinning very fast in the room." (Disability Claim Form; Rec Doc. 24 Ex. 2).  While Kreiser does appear to suffer from other illnesses, including depression and heart ailments, she does not contend that these conditions render her disabled.

Nonetheless, evidence supporting the Plaintiff's claim that she is disabled and cannot return to her occupation is sparse.   In support of her claim and as noted, she has submitted the documentation from her physician, Dr. Long who wrote on at least two occasions that she was not capable of performing the duties of her employment and recommended a job that included more time to be off of her feet.  However, as Defendant properly notes, there is no rule for ERISA cases that mandates a court to provide greater weight to the report of a claimant's treating physician over other physicians who review the claimant's medical condition. See Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)(holding that nothing in ERISA requires plan administrators or courts to give special deference to the opinions of treating physicians); see also McDonald v. Western Southern

Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003); Dinote v. United of Omaha Life

Ins. Co., 331 F.Supp.2d 341 (E.D. Pa. 2004).

In addition to her claim that the reports of her treating physician substantiate

her disability, Plaintiff also interposes the argument that the Defendant is estopped

from asserting that Kreiser is not disabled because of the contents of an April 18,

2003 letter from her employer, HMC.  This letter, over the signature of Edward J.

Winne ("Winne"), Director, Guest Services at HMC, stated, in part, that:

> Your safety is of upmost importance to us.  The record indicates an
> ongoing series of serious health conditions that have affected your
> physical stability while at work.  When you become dizzy or unstable
> while at work, your safety may be compromised.  We do not want you
> in the position where you may fall or stumble into the deep fryer or
> hot well, burn yourself on the grill, or while carrying knives, hot
> beverages or food, or even worse collapse in the walk-in refrigerator.

(Edward J. Winne Letter to Kreiser of 4/18/03; Rec. Doc. 19 Ex. B).  This letter

instructed Kreiser that she was being placed on medical leave, and to have her

physician respond to several inquiries so that a more permanent determination

could be made by HMC regarding whether Kreiser could work in the cafeteria.

However, this letter is not based on an independent evaluation of Kreiser by

medical personnel at HMC or by the Defendant.  Instead, the only information

known to Winne were the various absences and illnesses at work which Kreiser

claimed to have experienced.  Kreiser would have us place great weight upon this

letter and finds it highly probative of her disability.  We disagree.  First, it is clearly a rendering early in the process by a concerned supervisor, unaided by a physician and without the benefit of any medical data.  Second, the letter was based solely on Winne's interpretation of Kreiser's appearance at work during the first several months of 2003.  Third, Winne's clear intention was to place Kreiser on medical leave until such time as she was able to "provide [Winne] with information regarding [he]r medical condition" as to whether she could or could not perform the duties of her employment.  (Id. at 2).[3]  As noted, a full review of Kreiser's condition was commenced in October, 2003 by Defendant.

Other than Winne's letter and the reports from Dr. Long, little other evidence buttressed Kreiser's original application for benefits or her application on appeal.  Among the evidence in the record before Liberty Life that militated in favor of not approving her application we find a report from Kreiser's cardiologist Dr. McNulty, who had examined her at the behest of Dr. Long.  Dr. McNulty found that Kreiser had a normal stress echocardiogram and that she was able to walk seven minutes without chest pain.  Kreiser also submitted reports of various

---

[3] Plaintiff contends that because she cannot return to work until cleared by her physician, (Dr. Long) who has not cleared her return to the cafeteria, she must therefore be disabled as she cannot work at her job.  This is a circular argument which necessarily falls short of the mark.  As discussed in more detail herein, there is no extra weight given in an ERISA action for the opinion of a claimant's treating physician.

18

emergency room visits by her.  While these stand for the proposition that on a

number of occasions Kreiser felt the need to obtain emergency care, they provide

us with little or no additional medical evidence in support of this disability claim.

In contrast to Kreiser's evidence, Defendant had Kreiser's records evaluated

by several physicians and other experts.  The opinions by Defendant's reviewing

experts clearly support a finding that Kreiser was not disabled from working in her

job as a cafeteria worker.  First, Liberty Life had its registered nurse review

Kreiser's file.  This individual had questions as to whether Kreiser was indeed

disabled, but provisionally approved her application and referred it for a more

intensive review by Dr. Miszkiewicz.  As previously noted, Dr. Miszkiewicz found

that the probable cause of Kreiser's vertigo was the variety of medications she was

taking for her other illnesses.[4]

After Kreiser appealed Defendant's denial of benefits and as noted, Liberty

---

[4] We note that Dr. Long does not wholly disagree that Kreiser's medication causes her vertigo.  On at least three occasions, he hypothesized that her vertigo was a result of the medications that she took for other conditions.  (See e.g. Long Dictated Notes of 4/16/03; Rec. Doc. 24 Ex 5 at LL-0143)("Some of this could be medication effect.");(Long Dictated Notes of 5/2/03; Rec Doc. 24 Ex 5 at LL-0139)("Again, this may be related to polypharmacy and medication effects."); (Long Dictated Notes of 5/21/03; Rec Doc. 24 Ex 5 at LL-0138)("Do think this may be medication induced have discussed her care with Dr. McNulty and we are in agreement in stopping her Imdur and will also D/C [discontinue] her Norvsac.  If there is a component of poly pharmacy to the extent there can be a functional nature to this we are also increasing her Prozac to 40 mg q.d. for any symptomatology that persists despite these medication adjustment[s].").  It is important to note that after these adjustments were made to Kreiser's medications, her condition began to improve.  Id. at LL-0135.

Life then retained an outside agency, which procured an evaluation from an independent neurologist.  The neurologist, Dr. Greenwood, concluded in April 2004 that Kreiser's vertigo was related to her medications, and that the change in her medications resulted in an improvement in her condition.  In addition, we note that the reports of Drs. Miszkiewicz and Greenwood are buttressed by the normal results on the stress echocardiogram and the MRI tests of Kreiser's brain and internal auditory canal.  (See Rec. Doc. 24 Ex. 22; File Review Report of Dr. Steven Miszkiewicz of 4/19/04 at LL-0065 - LL-0066).

Finally, Kreiser does not discount the report considered by Liberty Life that was completed by its hired private investigator.  This report featured a description of Kreiser working at a feed store and able to move various boxes and other things without any noticeable problem.  (Id. at Ex. 21; Confidential Investigative Report by Gregory Peck of 4/12/04).  While work by investigators in cases such as this is generally viewed by claimants as vexatious and intrusive, Kreiser's day-to-day activities were fair game.  She offers no appropriate explanation for why she claims to be disabled as a cafeteria worker, but at the same acted as a laborer at a feed store.

Having reviewed the record as it existed at the time the decision to deny Plaintiff's disability benefits was made, the Court finds that the assessment of

Plaintiff's physical condition did not warrant an award of disability as proper and that it is "clearly [] supported by the evidence in the record." Orvosh, 222 F.3d at 129.  We believe that that Defendant's decision is proper under the most significantly heightened arbitrary and capricious review standard.  As previously noted, so long as the administrator's determination is clearly supported by the evidence, we are to affirm its decision.  Smathers, 298 F.3d at 199.  Here, the Defendant's decision to deny Plaintiff her benefits is supported by substantial evidence in the record, and without substituting the Court's judgment for that of the Defendants in determining eligibility for plan benefits, the Court concludes that Plaintiff is not "disabled" under the terms of the Plan and that its decision was neither arbitrary nor capricious.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Plaintiff's Motion for Summary Judgment (Rec. Doc. 17) is DENIED.

2.    Defendant's Motion for Summary Judgment (Rec. Doc. 20) is GRANTED.

3.    Plaintiff's Complaint (Rec. Doc. 1) is DISMISSED with prejudice.

4.    The Clerk is directed to close the file on this case.

s/ John E. Jones III
John E. Jones III
United States District Judge